DORA ZIMMERMAN, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE CO., APPELLANT.—41 S. W. (2d) 579.

Kansas City Court of Appeals. May 25, 1931.

*Harry G. Kyle* and *Walter A. Raymond* for respondent.

*Charles L. Carr, E. E. Ball* and *Harding, Murphy & Tucker* for appellant.

ARNOLD, J.—Action in damages for personal injury. Defendant is a corporation, organized and existing under the law, engaged as a common carrier of passengers for hire, and managing, controlling and operating a system of street railways in Kansas City, Missouri. Plaintiff is married and lives with her husband and two children in said city, and was thirty-six years of age at the time of the occurrence forming the basis of this suit.

The testimony in behalf of plaintiff shows that on February 21, 1928, at about four o'clock P. M., plaintiff attempted to board one of defendant's eastbound street cars on its Twelfth Street line, which had come to a stop at its scheduled stopping place on the east side of Walnut Street near its intersection with Twelfth Street. The car was what is known as a one-man car, that is, the crew consisted of but one man who stood at the controls in the front vestibule, received fares and operated the car, the usual entrance and exit to which was at the side of the front vestibule. There were also doors for entrance at the rear vestibule but these were not opened except at certain stops and then only from the outside by a conductor, or fare-taker, stationed at busy intersections, and who opened such rear doors by the use of a key. The testimony shows there was such a conductor or fare-taker, on the occasion in question, stationed on the pavement taking fares. Plaintiff paid him her fare and when the rear door was opened in the manner above indicated, she started to get on and while thus engaged, having one foot on the step which had been automatically lowered by the mechanism opening the door, the car suddenly moved backward, throwing plaintiff to the street with great force and violence, causing the injuries of which she complains. Plaintiff testified that in attempting to enter the car, she took hold of an iron rod with her right hand and the sudden movement of the car caused her to lose her balance, her hold on the rod was broken and she fell.

It is in evidence, and not disputed, that the mechanism of the car is such that the opening of the car door also lowers the step. The testimony further shows that after plaintiff had fallen the fare-taker took hold of her, assisted her to her feet and to board the car; asked if she were hurt and plaintiff answered "Yes, but not much." Plaintiff entered the car, seated herself and changed cars at Twelfth Street and Troost Avenue, taking a southbound car on Troost Avenue to the end of that line where she again transferred to a bus operated by defendant company, south to Sixty-first Street, and thence walked two or three blocks to her home at 6108 Rockhill Road.

The petition is formal and as its sufficiency is not questioned, we need only set out here the part required in the consideration of this appeal, as follows:

"That while said street car was so stopped at the regular stopping place the rear vestibule entrance door thereof was opened for the purpose of allowing passengers to board thereon; that plaintiff started to board said street car as said rear entrance door and while she was in the act of boarding said street car at said time and place the street car was negligently caused or permitted to move as a result plaintiff was thrown to the pavement of said street and as a direct and sole result thereof she received the following severe and permanent injuries, to-wit:

"That the trunk of her body and all of her organs were jarred, bruised and twisted:

"That her back, spine, spinal column was bruised, contused, wrenched, sprained and twisted; that her hips, legs, knees and ankles were bruised, contused, wrenched and sprained; that she received a severe and permanent shock to her entire nervous system; that on the 21st day of March, 1927, twenty-three days after said fall and injury she had a miscarriage which was caused solely and directly by said fall and injury. Plaintiff further states that all of the aforesaid injuries which are permanent and progressive were directly caused by the carelessness and negligence of the said defendant or its agents and servants in charge of the operation and management of the said street car and while acting in the line of their duty and scope of their employment for the defendant in this, to-wit:

"That said street car was negligently caused or permitted to move while plaintiff was in the act of boarding thereon; that the reason or cause for said street car moving at said time and place was not know to the plaintiff and is peculiarly within the knowledge of the defendant or its agents and servants."

Judgment was sought in the sum of $15,000.

The answer was a general denial. The cause was tried to a jury and resulted in a verdict, signed by nine of the jurors, in favor of plaintiff in the sum of $5,000. Judgment was entered accordingly. Timely motions for a new trial and in arrest of judgment were unavailing and defendant appeals.

While the motion for a new trial enumerates twenty errors, only two are briefed and argued here. The first point urged is the court erred in giving plaintiff's instruction No. 1, because it assumed the presence of the *res ipsa loquilur* doctrine; that the petition charges specific negligence and the only issue on the question of negligence was whether or not the car jerked while plaintiff, in the exercise of due care, was in the act of boarding it. Plaintiff insists the petition charges only general negligence; that it does not specifically set out the particular servant whose act caused the injury, but alleges "defendant or its agents and servants in charge of the operation and management of the street car . . ." caused plaintiff's injury. The petition states plaintiff did not know the cause of the starting of the car and that it "is peculiarly within the knowledge of the defendant or its agents and servants." Plaintiff argues this was not a specific charge of negligence, but a general charge and the doctrine of *res ipsa loquitur* applies. In support of its contention that the petition alleges specific negligence, defendant cites the cases of Stolevey v. Fleming et al., 8 S. W. (2d) 832 and Lammert v. Wells, 13 S. W. (2d) 547, both Supreme Court cases

wherein the question arose as to whether the charge of negligence was general or specific.

In the Stolovey case, the court said:

"In Bergfeld v. K. C. Rys. Co., 285 Mo. l. c. 665, 227 S. W. 106, 109, we said: 'In order to allege specific negligence, as said in the Price case, there must not only be an averment as to the particular servants whose negligence is complained of, but it must also be pointed out wherein they, or either of them, have been negligent.'

"The pleading before us not only contains 'an averment of the particular servants whose negligence is complained of,' but it specifically points out wherein these servants were negligent, to-wit: 'in starting the car while the plaintiff had one foot upon the step and trying to get thereon as a passenger.' We are unable to conceive of a more definite and specific allegation of negligence, and certainly such pleading does not bring the case within the doctrine of *res ipsa loquitur*."

Of like effect is the holding in the Lammert case where the petition alleged:

"While said car was stopped at said intersection for the purpose of allowing passengers to alight therefrom, plaintiff attempted to and was in the act of leaving said car at the front door thereof, and while plaintiff was so in the act of leaving said car and before plaintiff had stepped therefrom onto the street, the agents and servants of the defendant in charge of and operating said car, as aforesaid, carelessly and negligently caused and permitted said car to start."

We are of the opinion the cases cited afford no consolation for defendant in its contention. The rule is well settled that in alleging specific negligence there must be an averment as to the particular servants whose negligence is complained of and it must be specifically pointed out wherein these servants, or any of them, have been negligent. In Porter v. Light, etc., Co., 311 Mo. 66, 277, S. W. 913, the Supreme Court held, in order to constitute a specific allegation of negligence, as distinguished from a general allegation, an enumeration and averment of the specific act, or acts, relied upon as ground for recovery must be made. [See also Price v. Railway, 220 Mo. 435, 119 S. W. 932.] The petition herein simply alleges the ultimate facts concerning the relation of the parties, the act which caused the injury, and states generally that such act was negligently done. It sets out with reasonable certainty the act complained of, to-wit, the movement of the car backward, and alleges such movement was a negligent act. We hold the petition cannot reasonably be construed other than as general in its allegations. It does not attempt to specify which of defendant's servants was negligent, but states such fact is peculiarly within the knowledge of defendant. Thus construed, there is a foundation for the giving of plaintiff's instruction

No. 1, of which defendant complains. The case of Garfinkel v. Dry Goods Co., 25 S. W. (2d) 122, decided by the St. Louis Court of Appeals, is directly in point. The court said:

"Concededly plaintiff's petition does not plead specific negligence, but pleads negligence and invokes the doctrine of *res ipsa loquitur*. The doctrine of *res ispa loquitur* is applicable in those cases where the facts show that the mere occurrence of the injury or accident implies a breach of duty on the part of the defendant; or, in other words, which tends to show some neglect or omission of duty as the proximate cause of the injury. The maxim is applied where a wrong by one has resulted in an injury to another which is unusual in character, and which does not ordinarily happen, provided proper care is taken, and where the facts showing the cause of the injury or the reasons for the happening of the event are peculiarly within the knowledge of the perpetrator. [Riecke v. Brewing Assn., 206 Mo. App. 246, 227 S. W. 631; Kuether v. Light & Power Co., 220 Mo. App. 452, 276 S. W. 105.]"

We held the *res ipsa loquitur* doctrine applies.

Defendant argues plaintiff's instruction No. 1 erroneously places the burden of proof on defendant. An examination of the instruction shows it requires plaintiff to prove the car started suddenly while she was in the act of boarding it, and does not cast the burden on defendant until these facts have been established, and then the burden is cast upon defendant to prove by the greater weight of the credible evidence that there was no negligence on the part of defendant in said respects, and that the injuries, if any, sustained by plaintiff were occasioned by some cause which the highest degree of care on its part could not have avoided.

Contributory negligence was not pleaded and therefore is not an issue in the case.

Under Point 2, of Points and Authorities, defendant urges the verdict should have been set aside for the reason it was grossly against the greater weight of the evidence; that in spite of the rule touching the reversal of cases by appellate courts because the verdict is against the weight of the evidence, this court is invited to examine the record. Of course we cannot pass upon the weight of the evidence except insofar as to determine if there is any evidence of sufficient substantiality to take the case to the jury, which is the sole judge of the evidence. [Renfro v. Lazarine, 298 S. W. 1067; Missouri, etc., Coal Co. v. Coal & Mining Co., 235 S. W. 119.] The only question with which we are concerned, then, is whether there was evidence sufficiently substantial to support the verdict. Defendant's position in this respect is that plaintiff and her witness, Mrs. Saunders, who was present and saw the accident, both testified they did not see the car move. An examination of the testi-

mony of these witnesses shows it is quite positive to the effect the car did move backward. It is true each testified she could not tell how far it moved backward, but their evidence must be held sufficient to take the case to the jury. We hold. the trial court did not err in refusing the instructions in the nature of demurrers at the close of plaintiff's case and at the close of all the evidence. Witnesses testifying for defendant stated the car did not move; and that, because of the automatic apparatus used in the operation of the brakes, it was impossible for it to do so. However, there is the positive and substantial evidence in behalf of plaintiff that the car did move backward. Thus there was presented a question of fact for the jury. The jury were not obliged to believe either side. They found for plaintiff and we are not authorized to disturb their finding.

It is also insisted the verdict is unjust and was the result of prejudice and passion. Defendant recognizes the rule that a juror may not impeach his own verdict, bue calls attention to one ground mentioned in the motion for a new trial, as follows:

"There was a mistrial in this cause for the reason that said verdict was the result of intimidation and bias and prejudiced argument upon the part of one of the jurors sitting in this cause when said juror, while deliberating upon said case with the other jurors, stated to the balance of the jurors in substance as follows: 'If my wife was plaintiff in this case and the jury would return a verdict for $1,000, I would take a gun and shoot everyone of you.'"

This charge was supported by the affidavit of one Harry Tigerman, one of the jurors, whose name does not appear as having signed the verdict. The affidavit states the statement attributed to one of the jurors was made when the jury stood six to six. In this situation defendant insists the verdict was not based upon the evidence, but was the result of passion and prejudice.

We think this circumstance an insufficient basis for the position taken by defendant in this respect. The statement of the offending juror to the effect, "If my wife was the plaintiff in this case and the jury would return a verdict for $1,000, I would take a gun and shoot every one of you," may be accepted as an argument and not a threat. It cannot be construed as a matter of intimidation. The court was justified in refusing to accept the said affidavit as proof the verdict was the result of prejudice. We rule against defendant on this point.

Finally, defendant charges error in the refusal of the court to grant a new trial as embodied in the following circumstances. One Albin Johnson was on the panel and is one of the nine jurors signing the verdict. In the preliminary examination qualifying the jurymen, they were all asked the following question:

"Have any of you any suits pending against the Street Railways Company or any near relatives of your family that have a suit against the Street Railways Company?"

Said juror remained silent. One of the grounds set forth in the motion for a new trial is:

"There was a mistrial in this cause for the reason that Juror Albin Johnson, when asked the question as to whether or not he or any close relatives, or member of his family, or close business associate, had had any lawsuits against the Kansas City Public Service Company, or any of its predecessors, failed and refused to disclose the fact at that time that his brother, Adolph Johnson, instituted a suit in the circuit court of Jackson county, Missouri, at Kansas City, in case No. 171349, wherein Adolph Johnson was plaintiff and the receivers of the Kansas City Railways Company were defendants; said suit being one for personal injuries claimed to have been sustained by plaintiff."

This ground, as stated, is found not to be entirely accurate as to the purport of the question asked the jurors generally. The record shows the question was as to pending suits against the defendant, while the motion for a new trial quotes the question as to "whether or not he or any member of his family, or close business associate *had had* any lawsuits against" defendant. There is quite a difference between the question actually asked the jurors and that contained in the alleged ground for a new trial. The former referred to the present, the latter to the past. The record fails to show the jurors were asked if any of them has relatives who had ever had a law suit against defendant. The only question asked was by counsel for plaintiff and that was confined to pending suits. The record shows the suit by Juror Johnson's brother had been settled amicably about seven years before the suit in issue was tried. The trial court could not assume the circumstance could have any influence adverse to defendant in this trial. Moreover, defendant's counsel, by proper question, could have developed the facts relative to this juror's brother.

We find no reversible error of record, and the judgment is accordingly affirmed *Bland, J.,* concurs; *Trimble, P. J.,* absent.